John C. Poole, Washington, D. C., Dudley G. Skinker, Washington, D. C., on the brief, for appellants.

Herman Miller, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

**JEZIORSKI et al. v. HOLLOD.**

**MANCINI v. HOLLOD.**

Nos. 1507, 1508.

Municipal Court of Appeals for the District of Columbia.

Argued June 21, 1954.

Decided July 22, 1954.

 Appellants, to whom we shall refer as the tenants, sued appellee, their landlord, for rent overcharges on their apartments, and the two actions were consolidated for trial. Their claims were based on the District of Columbia Emergency Rent Act,[1] and although the Act expired on July 1, 1953, there can be no doubt that a right to sue for a prior rent overcharge has survived. The following pertinent facts were adduced at the trial.

On January 31, 1950, the Administrator of Rent Control issued an order setting maximum rent ceilings on the various units in a rooming house. Appellee was not the landlord at that time. The ceilings for units Nos. 9 and 13 were set at $50 per month. Appellee became the landlord in December, 1950, and on June 20, 1951, filed a statement with the Rent Administrator reciting that

1. Code 1951, § 45–1601 et seq.

she was the new landlord; that she had examined the rent schedule on file, knew its contents and knew that it was unlawful to charge rent in excess of the amount allowed by the Administrator. At the time she filed this statement appellee was informed by one of the clerks that rooming houses were no longer subject to rent control.

On August 8, 1952, appellee wrote to the Administrator informing him that she had just become aware of the fact that two of the units in the house were still subject to rent control because they were rooms with kitchens. This letter was accompanied by applications for the determination of maximum rent ceilings on units Nos. 4 and 6. The applications stated that no rent ceiling had been set for these two units and that No. 4 had been rented for the first time in March, 1952, to Mancini for $70 per month, while No. 6 had been rented for the first time in May, 1951, to Jeziorski at the rate of $85 per month. As a result of these applications the Administrator issued an order on October 28, 1952, setting the ceilings on these two units at $70 and $85 respectively. Soon thereafter it was called to the Administrator's attention that there was a conflict existing in his records as to the ceilings on the units occupied by the appellants, as the maximum rent orders of 1950 and 1952 set different ceilings for the same units and that these units were referred to by different numbers, i.e., Nos. 9 and 13 in the 1950 order and Nos. 4 and 6 in the 1952 order. A hearing was held to resolve this conflict and on May 6, 1953, the Administrator issued an order setting aside the order establishing the ceilings in 1952 and reestablishing the ceilings set in 1950. The order stated that the 1952 order was based on appellee's misrepresentation that no previous ceilings had ever been set on these units and as ceilings had been placed on these units under different numbers those ceilings were still in effect until changed by the proper procedure. No appeal was taken by appellee from this last decision of the Administrator.

It was clearly shown, therefore, that the ceilings on appellants' apartments were actually $50, and appellee was overcharging when she received $70 and $85 per month from these tenants. But it was argued before the trial court, as it is here, that appellee acted in good faith at all times, and that she was misled into charging these rents by the statement of the clerk at the Rent Control Board that all rooming houses had been decontrolled. No claim is made or could be made that she relied on the order of October 28, 1952, because the excess rents involved here were charged prior to the date of that order.

In making this "good faith" defense appellee relies on Title 45–1610(b), Supp. II, of the Code, which reads in part:

"No person shall be held liable for damages or penalties in any court on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision of this chapter or any regulation, order, or requirement thereunder, notwithstanding that subsequently such provision, regulation, order, or requirement may be modified, rescinded, or determined to be invalid."

The trial court accepted this argument and ruled in favor of the landlord on the claims of both of the appellants.

We cannot agree with this ruling. In making this defense there was no showing by the appellee that she was relying on any rescinded or modified order or regulation of the Administrator in overcharging these tenants. At the most she was relying on information furnished her by a clerk to the effect that rooming houses were decontrolled. Such information was correct [2] but did not apply to the housing units with kitchens as Congress had not at that time decontrolled housing accommodations with kitchens or kitchen privileges. But the accuracy of the information given to appellee is immaterial as the statements of a clerk cannot possibly be construed to

2. Code 1951, Supp. II, 45–1611(a) (3).

come within the provisions of the above quoted section of the Code.[3]

We rule, therefore, that the good faith of appellee was not in issue in the trial court and that it was error to give judgment to her on that basis. The case is, therefore, reversed with instructions to enter judgment for the appellants based upon the ceiling set by the Administrator, plus reasonable attorneys' fees.

Reversed with instructions.

---

3. See Shenk v. Gaudet, D.C.Mun.App., 83 A.2d 672.